UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MICHELLE F.,[1]

Plaintiff,

-against-

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

Defendant.

-----------------------------------------------------------x

25 Civ. 4640 (AEK)

**DECISION AND ORDER**

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[2]**

Plaintiff Michelle F. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Commissioner of the Social Security Administration (the "Commissioner"), which denied her application for Supplemental Security Income ("SSI") benefits. ECF No. 1. Plaintiff filed a brief in support of her appeal, ECF No. 14 ("Pl.'s Mem."), the Commissioner filed a brief in response, ECF No. 17 ("Def.'s Mem."), and Plaintiff filed a reply brief, ECF No. 18. For the reasons that follow, Plaintiff's motion (ECF No. 14) is GRANTED, and the case is remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g), and not solely for the calculation of benefits.

---

[1] To preserve her privacy, Plaintiff is referred to by her first name and the first initial of her last name.

[2] On July 22, 2025, the Honorable Nelson S. Román endorsed and docketed a fully executed Form AO 85, "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," in which the parties consented to the reassignment of this matter to a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). ECF No. 7. This matter was then reassigned to the undersigned.

## BACKGROUND

### I. Procedural Background

Plaintiff filed an application for SSI on December 28, 2012, alleging May 13, 2011 as the onset date of her disability. Administrative Record ("AR") 78, 87.[3] The Social Security Administration ("SSA") denied Plaintiff's application on April 13, 2013, AR 88-91, and she requested a hearing before an Administrative Law Judge ("ALJ"), AR 92-94, which was held on March 18, 2014 before ALJ Vincent M. Cascio, AR 47-77. ALJ Cascio issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") on July 29, 2014. AR 32-46. The SSA's Appeals Council denied Plaintiff's request for review on February 10, 2016. AR 1-8. On April 11, 2016, Plaintiff filed a complaint in this District seeking to challenge the July 29, 2014 denial of benefits, and in July 2016, the parties stipulated to remand the case for further administrative proceedings. *See* S.D.N.Y. Dkt. No. 16-cv-2674, ECF Nos. 1, 10. On September 25, 2016, the Appeals Council issued an order remanding the case to an ALJ for resolution of certain specified issues. AR 643-47.

A second hearing was held before ALJ Cascio on June 15, 2018. AR 582-616. On September 6, 2018, ALJ Cascio again issued a decision denying Plaintiff's application for benefits. AR 655-78. Plaintiff sought review by the Appeals Council on September 17, 2018, AR 781-85, and on May 22, 2019, the Appeals Council again sent the case back to an ALJ to address particular issues, AR 707-11.

On December 2, 2019, a third hearing was held, this time before ALJ Laura Michalec Olszewski. AR 537-81. ALJ Olszewski issued a decision denying Plaintiff's application for

[3] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner. ECF No. 10.

benefits on December 26, 2019. AR 504-28. On March 4, 2021, the Appeals Council declined to assume jurisdiction in response to Plaintiff's exceptions to the December 26, 2019 decision. AR 494-500. Plaintiff then filed a second action in this District, this time to challenge the December 26, 2019 denial of benefits, and on March 14, 2022, the parties again stipulated to remand the case for further administrative proceedings. *See* S.D.N.Y. Dkt. No. 21-cv-3346, ECF Nos. 1, 20. On May 9, 2022, the Appeals Council issued an order remanding the case to an ALJ for further proceedings. AR 1263-66.

On December 9, 2022, a fourth administrative hearing was held, this time before ALJ Sharda Singh. AR 1219-62. ALJ Singh issued a decision denying Plaintiff's application for benefits on March 23, 2023. AR 1191-1218. The Appeals Council denied Plaintiff's request for review on April 11, 2025. ECF No. 1 ¶ 25. On June 3, 2025, Plaintiff commenced the instant action, seeking judicial review of ALJ Singh's March 23, 2023 decision. *See* ECF No. 1.

## II. Testimonial, Medical, and Non-Medical Evidence

Both parties have provided summaries of the testimonial, medical, and non-medical evidence contained in the administrative record. *See* Pl.'s Mem. at 2-14; Def.'s Mem. at 2-6. Based on an independent and thorough examination of the record, the Court finds that these summaries of the evidence are largely comprehensive and accurate.[4] Accordingly, the Court adopts the summaries and discusses the evidence in the record in more detail to the extent necessary to a determination of the issues raised in this case. *See, e.g.*, *Banks v. Comm'r of Soc.*

[4] Even though the administrative record and ALJ Singh's March 23, 2023 decision contain extensive discussion of Plaintiff's physical limitations, the parties limited their discussion to Plaintiff's psychological impairments, because Plaintiff "does not dispute the physical limitations found by the ALJ for the [Plaintiff] in this appeal." Pl.'s Mem at 2 n.4. Because Plaintiff's physical impairments are not at issue here, this Decision and Order exclusively addresses the psychological impairment findings that are in dispute.

*Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

### I. Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when determining that the plaintiff was not disabled. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Failure to apply the correct legal standards is grounds for reversal.'" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 106 (cleaned up). The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (cleaned up). To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (cleaned up). "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (cleaned up) (emphasis in original). "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'" *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

## II. Determining Disability

The Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in determining whether a particular claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4). The Commissioner first considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i), (b). If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the second step, at which the Commissioner considers the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimant suffers from any severe impairment, the Commissioner at step three must decide if the impairment meets or equals a listed impairment; listed impairments are presumed severe enough to render an individual disabled, and the criteria for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations. 20 C.F.R § 416.920(a)(4)(iii), (d).

If the claimant's impairments do not satisfy the criteria of a listed impairment at step three, the Commissioner must then determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). A claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). After determining the claimant's RFC, the Commissioner proceeds to the fourth step to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), (e)-(f). If it is found that the claimant cannot perform his or her past relevant work, the Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work experience to determine whether he or she can adjust to other work. 20 C.F.R. § 416.920(a)(4)(v), (g). To support a finding that the claimant is disabled, there must be no other work existing in significant numbers in the national economy that the claimant, in light of his or her RFC and vocational factors, is capable of performing. 20 C.F.R. § 416.960(c).

The claimant bears the burden of proof on the first four steps of this analysis. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998). If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000). If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of performing other work. *DeChirico*, 134 F.3d at 1180.

## DISCUSSION

Plaintiff seeks to reverse the Commissioner's decision and have the matter remanded solely for the calculation of benefits or, alternatively, for further administrative proceedings. Pl.'s Mem. at 26-27. She contends that the ALJ improperly evaluated the medical opinion evidence and failed to properly apply the treating physician rule with respect to Plaintiff's psychological limitations, *id.* at 15-24, and did not properly evaluate Plaintiff's subjective

statements, *id.* at 24-26. The Commissioner seeks to have the agency's final decision affirmed, and maintains that the ALJ's decision is based upon the application of correct legal standards and is supported by substantial evidence. *See* Def.'s Mem. at 7-16.

## I. The ALJ's Decision

ALJ Singh applied the five-step sequential analysis described above and issued a decision finding that Plaintiff was not disabled from December 28, 2012, the date she filed her application for SSI benefits. AR 1191-1208. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 28, 2012. AR 1193. Second, the ALJ determined that Plaintiff had the following severe psychological impairments: personality disorder, bipolar disorder, adjustment disorder, posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder. AR 1193-94. Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 1194.

According to the ALJ, Plaintiff retained the RFC to perform light work, subject to certain restrictions. Specifically with respect to her non-exertional limitations, which are the only matters in dispute here, the ALJ limited Plaintiff's RFC as follows:

> [Plaintiff] is limited to understanding, remembering and carrying out simple, routine and repetitive tasks; she is limited to unskilled work with occasional judgment, decision-making and changes in a routine workplace setting; and she can have occasional interactions with supervisors, coworkers and the general public.

AR 1197.

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's symptoms by applying the two-step framework described in 20 C.F.R. § 416.929 and SSR 16-3p. *Id.* The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but also found that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 1198. The ALJ provided a summary of the evidence in the record, including Plaintiff's statements about her symptoms and activities of daily living, as well as the medical treatment records. AR 1198-1203.

ALJ Singh also considered the opinion evidence in accordance with 20 C.F.R. § 416.927. With respect to Plaintiff's psychological impairments, the record included a March 18, 2013 opinion from consultative examiner Melissa Antiaris, Psy.D. (AR 300-304); a June 20, 2017 opinion from consultative examiner Arlene Rupp-Goolnick, Ph.D. (AR 999-1003); a June 6, 2018 report from Plaintiff's treating psychiatrist, Lissette Leon, M.D. (AR 1026-30); and a June 8, 2018 report from Plaintiff's treating therapist, Danielle O'Malley, L.C.S.W. (AR 1021-25).

ALJ Singh gave "little weight" to Dr. Leon's assessment of marked limitations with concentration, persistence, adaptation and social interactions that would limit Plaintiff's ability to work or would result in her missing multiple days of work per month. AR 1205. Even though this was an opinion of a treating physician, the ALJ found the opinion to be inconsistent with Dr. Leon's own evaluations, inconsistent with the evaluation notes of the consultative examiners, and inconsistent with Plaintiff's ability to care for her sister and her grandson. *Id.* According to ALJ Singh, Plaintiff missed several appointments for reasons unrelated to poor mental health; the ALJ concluded, contrary to Dr. Leon's opinion, that these missed appointments were not consistent with a finding that Plaintiff's mental health would result in her missing multiple days of work per month. *Id.*

ALJ Singh also gave "little weight" to Ms. O'Malley's assessment that Plaintiff had marked limitations in understanding, memory, concentration, persistence, adaptation, and in social skills that would limit Plaintiff's ability to work or would result in her missing multiple

days of work per month. *Id.* The ALJ found the opinion to be inconsistent with Ms. O'Malley's treatment notes. *Id.* Again here, ALJ Singh, in language identical to her conclusions regarding Dr. Leon, found that Plaintiff's missed appointments were for reasons unrelated to poor mental health, and she concluded, contrary to Ms. O'Malley's opinion, that these missed appointments were not consistent with a finding that Plaintiff's mental health would result in her missing multiple days of work per month. AR 1206.

ALJ Singh gave "great weight" to the assessment of Dr. Antiaris, the 2013 consultative examiner, that Plaintiff had only moderate limitations with stress, lacks motivation, had no limitations with understanding simple directions or tasks, had an ability to maintain a regular schedule, and had no limitations with attention and concentration. AR 1204. The ALJ found the opinion to be well supported by Dr. Antiaris's examination, and generally consistent with Plaintiff's treatment notes in the broader record and Plaintiff's "general independence with activities of daily living." *Id.*

Finally, ALJ Singh gave "little weight" to the assessment of Dr. Rupp-Goolnick, the 2017 consultative examiner, who opined that Plaintiff had, among other things, moderate limitations with attention, concentration, maintaining pace, regular attendance, regulating emotions, sustaining an ordinary routine, controlling behavior, maintaining wellbeing, maintaining hygiene and appropriate attire, and awareness of hazards and taking precautions. *Id.* The ALJ found the opinion inconsistent with Dr. Rupp-Goolnick's own evaluation and inconsistent with treatment notes in the broader record. AR 1204-05. According to ALJ Singh, Dr. Rupp-Goolnick provided no detail as to why she believed Plaintiff would be unreliable with attendance or unable to sustain an ordinary routine. AR 1204.

At the fourth step, the ALJ found that Plaintiff had no past relevant work. AR 1207.

At the fifth step, the ALJ found, after receiving testimony from a vocational expert ("VE"), that considering Plaintiff's age, education, work experience, and RFC, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 1208.

In sum, the ALJ determined that Plaintiff has not been under a disability, as defined in the Act, since December 28, 2012. *Id.*

## II. The ALJ's Evaluation of the Medical Opinion Evidence

### A. Legal Standard for Application of the Treating Physician Rule

As a general matter, an ALJ is directed to consider "every medical opinion" in the record, regardless of its source. 20 C.F.R. § 416.1527(c). Yet not every medical opinion is assigned the same weight. "Under the treating physician rule, an ALJ must give 'controlling weight' to the opinion of a claimant's treating physician, so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Castorina v. Kijakazi*, No. 21-100-cv, 2023 WL 4229250, at *1 (2d Cir. June 28, 2023) (summary order) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (cleaned up)); *accord Schillo*, 31 F.4th at 75.[5] "If the treating physician's opinion is not well-supported or is contradicted by substantial evidence, then the ALJ must articulate good reasons to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Castorina*, 2023 WL 4229250, at *1 (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022) (cleaned up)). "The ALJ must then determine how much

[5] The SSA regulations were amended for claims filed after March 27, 2017. Because Plaintiff filed her application for SSI benefits on December 28, 2012, citations to SSA regulations in this section are to the earlier version of the "treating physician rule," which applies in this matter. *Schillo*, 31 F.4th at 71.

weight, if any, to give the treating physician's opinion." *Id.* (citing *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019)). In doing so, the ALJ must explicitly consider certain nonexclusive factors—known as the *Burgess* factors—when making this determination: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (cleaned up); *see* 20 C.F.R. § 404.1527(c). The failure to explicitly apply these factors "is procedural error and subject to harmless error analysis." *Schillo*, 31 F.4th at 75.

The ALJ need not provide a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order). Nonetheless, the Commissioner must "always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [a claimant's] treating source's medical opinion," 20 C.F.R. § 416.927(c)(2); *see Colgan*, 22 F.4th at 360, and must "comprehensively set forth reasons for the weight" ultimately assigned to the opinion of the treating source, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Burgess*, 537 F.3d at 129-30.

**B. The ALJ's Application of the Treating Physician Rule**

Plaintiff contends that ALJ Singh erred by failing to give controlling weight to the opinion of her treating psychiatrist, Dr. Leon. Pl.'s Mem. at 15-21. Alternatively, Plaintiff maintains that even if the ALJ did not err by giving the treating physician's opinion less than controlling weight, she failed to explicitly apply the *Burgess* factors and failed to give good reasons for the decision to assign little weight to Dr. Leon's opinion. *Id.* at 22-23. As to this second point, the Court agrees: the ALJ did not clearly apply the *Burgess* factors, and failed to

provide good reasons for not crediting Dr. Leon's opinion. The ALJ's procedural error was not harmless because, even after a searching review of the record, the Court "cannot be confident . . . that notwithstanding this procedural error, the substance of the treating physician rule was not traversed." *Hamilton v. Comm'r of Soc. Sec.*, No. 22-612-cv, 2023 WL 2395931, at *2 (2d Cir. Mar. 8, 2023) (summary order). Accordingly, this matter must be remanded to the Commissioner for further administrative proceedings.

In a Psychiatric and Psychological Impairment Questionnaire completed on June 6, 2018, Dr. Leon indicated that Plaintiff had marked limitations in her ability to: (1) work in coordination with or near others without being distracted by them; (2) complete a workday without interruptions from psychological symptoms; (3) perform at a consistent pace without rest periods of unreasonable length or frequency; (4) accept instructions and respond appropriately to criticism from supervisors; (5) respond appropriately to workplace changes; and (6) travel to unfamiliar places or use public transportation. AR 1029. Dr. Leon also assessed moderate-to-marked limitations in Plaintiff's ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule and consistently be punctual; (3) sustain ordinary routine without supervision; (4) get along with coworkers or peers without distracting them; and (5) set realistic goals. *Id.* ALJ Singh declined to give controlling weight to the opinion because, in her view, it was inconsistent with Dr. Leon's own evaluations and inconsistent with the broader record. AR 1205. But critically, ALJ Singh did not expressly address the *Burgess* factors in reaching this determination.

First, the ALJ failed to adequately account for Dr. Leon's long-term treating relationship with Plaintiff. This shortcoming is significant. Dr. Leon met with Plaintiff regularly from March 2015 to approximately June 2018 for medication management and management of

depressed mood, mood swings, anxiety, chronic auditory and visual hallucinations, and interpersonal problems. *See, e.g.*, AR 983-85, 1099. The nature of that relationship would have given Dr. Leon a far greater degree of insight into Plaintiff's capacities than either of the consultative examiners who evaluated Plaintiff, including the one examiner—who met Plaintiff just once, in 2013—whose report ALJ Singh found most persuasive of all the psychological opinion evidence. *See* AR 1204. In general, "[t]reating physician opinions are considered particularly probative because they are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." *Odilma B. v. Comm'r of Soc. Sec.*, No. 22-cv-03198 (KMK) (GRJ), 2023 WL 3937390, at *19-20 (S.D.N.Y. May 11, 2023) (cleaned up), *adopted by* 2023 WL 3936642 (June 9, 2023). This is particularly true in the context of psychological impairments. *See Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 266 (S.D.N.Y. 2016) ("the length and frequency of [the treating physician's] treatment of [the claimant] is especially relevant in evaluating a claimant's psychiatric impairments" (cleaned up)); *Gilpin v. Comm'r of Soc. Sec.*, No. 23-cv-6758 (LJL), 2024 WL 4903681, at *13 (S.D.N.Y. Nov. 27, 2024) ("Assessment by a medical source with longitudinal experience with the claimant is especially important in cases involving mental health impairments."). While certain portions of the ALJ's decision indicate that she was aware that Dr. Leon had treated Plaintiff for an extended period, *see* AR 1201-02, the ALJ erred because her evaluation—and discounting—of Dr. Leon's opinion provides no insight into how (if at all) she accounted for "the frequency, length, nature, and extent" of the treatment relationship.

Second, while the ALJ found that Dr. Leon's own treatment notes indicated fewer difficulties for Plaintiff than Dr. Leon reported in her opinion, *see* AR 1205, this selective reading of Dr. Leon's treatment records ignores findings throughout the treatment history that support the restrictions set forth by Dr. Leon. Dr. Leon's records contain numerous entries documenting Plaintiff experiencing a depressed mood or episodes of depression. *See, e.g.*, AR 984, 987, 1034, 1038, 1048, 1063, 1067, 1070. Her notes show that over the years of their treatment relationship, Plaintiff would experience cycles of improvement followed by returning symptoms of mental illness. *See, e.g.*, AR 1048 ("On August 5th [2017], pt went to ER because feeling very depressed . . . [medication change] with good results"); AR 1067 ("Mood and sleep had been better until the past 3 months ago, when depressed mood started in the context of family conflicts"). Dr. Leon's records also include significant evidence of Plaintiff's anxiety, an unwillingness to leave the house or shower, and feelings of being overwhelmed. AR 1038 ("Pt reports . . . 10 days without taking a shower or leaving [her] house"); AR 1045 ("Irregular attendance recently as pt reports feeling overwhelmed by a lot of appointments and taking care of sister who was ill. Reports mainly anxiety and no evidence or report of clear mood episode in the past 3 months"). As the Second Circuit has explained in reversing an ALJ decision for failure to explicitly apply the *Burgess* factors, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (cleaned up). Ultimately, the ALJ cannot "simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." *Odilma B.*, 2023 WL 3937390, at *8.

Third, ALJ Singh failed to address the fact that three of the four opinions from mental health providers or examiners—including Dr. Leon's treating physician opinion—were consistent with one another in terms of their assessments of Plaintiff's psychological limitations, and in particular the likelihood that her symptoms would cause her to be absent from work with such frequency as to preclude employment. *See* AR 1030 (Dr. Leon's opinion that Plaintiff would be absent more than three times per month); AR 1025 (Ms. O'Malley's opinion that Plaintiff would be absent more than three times per month)[6]; AR 1002 (Dr. Rupp-Goolnick's opinion that Plaintiff's psychiatric problems "may significantly interfere with [her] ability to function on a daily basis," including moderate limitations in her ability to sustain regular attendance at work).[7] Yet these three opinions were the ones to which ALJ Singh assigned "little weight." *See* AR 1204-06. Curiously, ALJ Singh discounted each of these opinions in part on the ground that they were inconsistent with the providers' own observations of Plaintiff, but she failed to even address the compelling reality that the opinions of these three providers—the two

[6] In her June 8, 2018 report, Ms. O'Malley indicated that Plaintiff has a history of chronic depression, mood instability, and interpersonal limitations, and that her symptoms would likely increase if she were placed in a competitive work environment. AR 1024. She opined that Plaintiff's emotional symptoms would be severe enough to interfere with attention and concentration "frequently"—*i.e.*, from 1/3 to 2/3 of an eight-hour workday. *Id.*

[7] The issue of Plaintiff's ability to regularly attend work is crucial to the determination in this case. At the latest administrative hearing, ALJ Singh asked the VE whether there were any jobs in the national economy for an individual with Plaintiff's RFC who would be absent from work for more than two days each month. AR 1252-54. The VE testified that two days absent from work per month would not allow for any competitive work in the national economy. AR 1254. When asked by Plaintiff's attorney whether *three* or more days absent from work per month (as Dr. Leon and Ms. O'Malley said would be necessary for Plaintiff) would preclude competitive work, the VE confirmed that three or more days absent per month would preclude all work. AR 1258.

with extended longitudinal relationships with Plaintiff,[8] and the consultative examiner with the far more recent examination of Plaintiff—were consistent with one another. Instead, the ALJ credited the findings of Dr. Antiaris over Dr. Leon's views, even though Dr. Antiaris performed only one consultative examination of Plaintiff, before Dr. Leon (or Ms. O'Malley) even began to treat Plaintiff. But the opinion of Dr. Antiaris does not provide a good reason for diminishing Dr. Leon's opinion. The Second Circuit has frequently cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (remanding to the SSA for further administrative proceedings in part based on the failure to provide "good reasons" for not crediting a treating physician's opinion). "This concern is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98. At a minimum, a proper application of the *Burgess* factors required ALJ Singh to address the consistency of the opinions of Dr. Leon, Ms. O'Malley, and Dr. Rupp-Goolnick, and to explain why it was appropriate to discount the weight assigned to Dr. Leon's opinion in light of this confluence of record evidence.

The ALJ also failed to account for the consistency of Dr. Leon's opinion with Plaintiff's testimony across four separate administrative hearings. Plaintiff testified consistently in 2014,

---

[8] Ms. O'Malley's opinion is not entitled to controlling weight, even though she was a treating provider, because a social worker was not considered to be an "acceptable medical source" within the meaning of the applicable regulations that time. "Although the opinions of a licensed clinical social worker may provide highly relevant evidence bearing upon the severity of an individual's impairments and how it may affect an individual's ability to function, social workers do not qualify as acceptable medical sources" and "would be ineligible to receive controlling weight." *Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 540 (S.D.N.Y. 2019) (cleaned up); *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 541 (2d Cir. 2011) (summary order). Still, Ms. O'Malley's opinion is important, particularly in this context, as her conclusions were consistent with those reached by Dr. Leon.

2018, 2019, and 2022 that she has limited interactions with people, *see* AR 66, 68, 71-72, 600, 1238-39, 1247, spends significant portions of her day sleeping, *see* AR 71, 553, 572, 597, 600-01, 1248-49, and has difficulty focusing and completing tasks, *see* AR 66, 567, 600, 1225. ALJ Singh highlights some evidence from more recent hearings that Plaintiff cared for her sister for a brief time after a surgical procedure, *see* AR 555-56, and would babysit for her young grandchildren for short periods, *see* AR 558-60, 1259-60, to suggest that Plaintiff is not unreliable. AR 1205. But these limited activities, for a short period in Plaintiff's long history of psychological limitations, do not provide good reasons to discount Dr. Leon's opinion. *See Colgan*, 22 F.4th at 363 (finding that a claimant's ability to care for her two young children and "engage in activities necessary to her own welfare" did not "make a treating physician's findings flawed and foreclose an applicant's entitlement to disability benefits").

* * * * * * * * * *

For all of these reasons, the Court finds that the ALJ did not clearly and explicitly apply the *Burgess* factors, and that the ALJ's limited reasoning for the weight she gave to the opinion of Plaintiff's longtime treating physician does not provide sufficient "good reasons to rebut the presumption of controlling deference conferred to the treating physician's opinion." *Colgan*, 22 F.4th at 360 (cleaned up). Accordingly, remand is warranted.[9]

## III. The Appropriate Remedy

The Second Circuit has held that remand solely for the calculation of benefits is appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

---

[9] Because the Court concludes that the ALJ failed to apply the correct legal standard when considering Dr. Leon's opinion, the Court need not—and does not—separately address Plaintiff's arguments concerning the ALJ's evaluation of her subjective statements.

1980). That is not the case here, where ALJ Singh's error was in applying an improper legal standard to her analysis of the medical opinions. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) ("Where . . . the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Commissioner for further development of the evidence." (cleaned up)). While there have been significant delays in the adjudication of Plaintiff's claim, including multiple remands and administrative hearings before different ALJs, "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). The Court is not able to make that determination on its own here. Accordingly, a remand solely for calculation of benefits is not warranted by the delays in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion (ECF No. 14) is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and to REMAND this matter for further administrative proceedings pursuant to sentence four of Section 405(g), and not solely for the calculation of benefits.

Dated: September 29, 2026
White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge